## NATIONAL SERVICE CORPORATION v. GARDIKIS.

No. 6926. Decided August 21, 1946. (172 P. 2d 120.)

See 48 C. J., Pawnbrokers, sec. 8; 40 Am. Jur. 698. Small loan Acts —Maximum Loan, note, 99 A. L. R. 923.

*Chris T. Praggastis,* of Salt Lake City, for appellant.

*B. R. Parkinson,* of Salt Lake City, for respondent.

PRATT, Justice.

This case originated in the City Court, was appealed to the District Court and from there to this court. The question involved is one of pleading and calls for an interpretation of Section 7-8-5, U. C. A. 1943, which reads:

"Every person acting under and abiding by the provisions of this chapter shall be allowed to charge on loans or advancements of $300 or less three per cent per month, or for a fraction of a month, on such loans or advancements made by such person or made in behalf of any person; *provided however,* that said three per cent shall include, in the aggregate, all fees, charges, bonus, interest, expense, demands or exactions of any nature whatsoever, except as hereinafter specified. No such licensee shall charge or receive of the borrower or any other person on his or their behalf, a greater rate of interest than three per cent per month. *Nothing in this chapter shall be construed so as to allow or permit the splitting up of transactions for the loan of money into small amounts for the purpose of coming within, or securing the benefits of, or evading the provisions of, this chapter.* Such interest shall not be payable in advance and shall be computed on unpaid balances only. No charges, bonus, fees, expense, demands or exactions of any nature whatsoever, other than interest as above provided, shall be made upon such loans or advancements, except upon the actual foreclosure of the security or upon the entry of judgment. * * *" (Italics added.)

Plaintiff alleged the execution and delivery to it by defendant of a note for $211 with interest at 3% per month, secured by a mortgage of certain chattels, and upon which there was a balance of principal due of $133. The complaint included a prayer for the balance of principal, interest, attorney's fees, costs, and for sale of the chattels. This note was executed April 8, 1944, and a copy was attached to the pleadings.

Defendant answered and counterclaimed. He admitted the execution and delivery of the note for $211, but as an affirmative defense to payment of the balance, and as a

counterclaim, alleged that on August 1, 1944, he and his wife executed and delivered to plaintiff another note for $300 with interest upon unpaid installments at $2\frac{1}{2}\%$ per month, or 3% upon delinquent installments. A copy of this note is attached, but it does not indicate his wife's signature. In his answer, defendant alleged that to secure the payment of this second note he and his wife executed a chattel mortgage covering certain listed personal property—the property is the same as that alleged by plaintiff in its complaint as being the chattels securing the first note. In his counterclaim, however, he alleges as follows:

"2. That on April 8, 1944 and on August 1, 1944, at Salt Lake City, Utah, the plaintiff acting as such licensee, but contrary to the provisions of Title 7, Chapter 8, Utah Code Annotated 1943, loaned sums amounting to over $300 to defendant as borrower for which loans notes have been executed in favor of the plaintiff and signed by the defendant which have already been incorporated into the complaint and the answer and by reference made a part thereof, and which are also referred to in this allegation and made a part thereof."

Paragraph 7 of the counterclaim alleges:

"That to secure such loans and notes the Plaintiff required the defendant and his wife, to make, execute and deliver the chattel mortgages as follows * * *."

Here again are included the chattels previously mentioned, and in addition thereto a Chrysler sedan. Paragraph 5 of the counterclaim alleges:

"That the defendant paid on account of said notes and loans the following amounts on the following dates, to wit * * *."

Defendant seeks to invoke the penalty of Section 7-8-9 of the code of 1943, which declares the instruments executed in violation of Section 7-8-5, above, to be void and permits recovery of all sums paid thereon.

Plaintiff filed a motion to strike this affirmative defense and also the essential part of the counterclaim. Plaintiff also filed a demurrer to both the answer and the counter-

claim upon general grounds and upon grounds of uncertainty. The motion and demurrer were sustained, and defendant stood upon his pleading. Judgment was rendered against him, and this appeal followed.

It is well to keep in mind the following facts in a consideration of this appeal. The appeal is upon a judgment roll, and therefore, we do not have before us the wording of the chattel mortgage, or mortgages if there were more than one, to see whether or not reference is made therein to one or two notes. The mortgage was not incorporated as a part of any of the pleadings. The question before us is whether or not the defendant by his pleadings has brought the parties within the provisions of Section 7-8-5, U. C. A. 1943, quoted above.

We invite particular attention to the italicized sentence in Section 7-8-5, as it is apparent that defendant's defense and counterclaim are intended to fall within the provisions of that sentence. Defendant treats the expression "splitting up of transactions" as indicating that all ∎ transactions between the parties shall be considered as a unit, and if the total thereof exceeds $300 that unit cannot be split into individual transactions in order to permit the interest allowable on sums of $300 or less. This seems to be a strained interpretation of the English language, and, although it would accomplish what the Legislature of this state accomplished in 1945 in its amendment of this law (Section 7-8a-15), we do not believe that such an interpretation was contemplated in the enactment of the quoted section. Were it otherwise there was no need for the 1945 amendment. In our opinion the expression "splitting up of transactions" simply means that a single transaction is not to be broken up into smaller units in order to evade this particular law. The use of the plural of the word "transaction" is the same as if the Legislature had said:

"Transactions falling under this law are not to be split into smaller units in order to evade the law."

The plural is a generic way of referring to the commercial relationships covered by the law. It affords no implication of unity of transactions. The limit as to interest is upon the individual transaction, not upon the total amount of independent loans outstanding between the parties.

If the facts of this case had justified defendant in alleging, in substance, that as a matter of fact the two notes were the result of one transaction but were separately executed and delivered to avoid the effects of the section of our code, such pleadings would have placed the parties within the terms of the section, and in particular the italicized part thereof. The quoted paragraphs 2, 7 and 5, taken from the counterclaim, have some suggestion of the thought that the two notes were the result of one transaction, but they are not definite and certain in that respect, and it is obvious from defendant's argument that it was not intended to allege the facts upon that theory. As a foundation for his defense and counterclaim, defendant applied law applicable in other states, under statutes differing from ours. See *Walker* v. *People's Finance and Thrift Co.*, 45 Ariz. 226, 42 P. 2d 405, rehearing 46 Ariz. 224, 49 P. 2d 1005; *Stadtmauer* v. *Jefferson Finance Corp.*, 9 N. J. Misc. 1341, 157 A. 844; *Hartsfield Co.* v. *Robertson*, 48 Ga. App. 735, 173 S. E. 201.

In our opinion the demurrer to the pleadings was properly sustained. Judgment affirmed. Costs to respondent.

McDONOUGH, WADE, and WOLFE, JJ., concur.

LARSON, C. J., concurs in affirming the judgment.