## 56821. KRUPP et al. v. TAYLOR ENTERPRISES, INC.

DEEN, Presiding Judge.

1. "When by agreement, the surety's obligation is conditioned upon the creditor's enforcement of security, the surety may be discharged by creditor's failure to uphold the surety agreement. . . However, when no such agreement is found, the courts have not conditioned the creditor's right of recovery from the surety on his first using any security he may have to satisfy or reduce his claim." *Trust &c. Co. v. First Ga. Bank,* 238 Ga. 309, 311 (232 SE2d 828) (1977). The same rule would apply as between the payee and the accommodation endorsers on a note, nothing further appearing. See Code §§ 109A-3 — 414, 109A-3—415. In this action by the appellee plaintiff, payee of a note and security agreement which is by reference made a part thereof, against the endorsers on the note, the same rules would be applicable. Accordingly, whether the appellants' contention (that the plaintiff had no right to

sue them on the note until after the property in question which constituted the collateral security had been foreclosed on and sold) is a legal defense to this action depends upon the wording of the note and security agreement.

2. In accordance with the express provisions of the promissory note sued on, and which contains an acceleration clause, the security agreement must be considered as incorporated therein. In determining whether or not the endorsers have a right to demand that foreclosure proceedings against the property pledged as collateral be terminated and the proceeds credited to the debt before suit can be brought on the note, the note and security agreement must be considered as one contract. In the note, George Krupp signed as general partner of the maker Valley Estates and both Krupps signed individually as endorsers. In the security agreement Valley Estates, by George Krupp, as general partner, is the designated debtor, and the Krupps are "Principals," this latter defined as a beneficial owner, which they as general partners undeniably are. Under Article V also the plaintiff in the event of default may by notice accelerate the debt and sell the collateral at public or private sale. "Should there be a deficiency arising from such default proceedings, in no event shall the Debtor, or any of the Principals of the Debtor, be liable for any such deficiency, except that nothing herein contained shall be deemed to release any endorsers on the note from the obligations undertaken as a result of such endorsement." Article VI specifies that the Debtor and Principals shall have no deficiency obligations, but these provisions "shall not affect the obligations of any endorsers who have signed the note personally." Article VII gives the Principals the right to assign their interest in Valley Estates "provided that such assignment shall not relieve the debtor nor the personal endorsers on the note from any obligations hereunder or in accordance with the terms of the note."

A similar secured note and guaranty contract were considered in *Gray v. Cousins Mtg. &c. Inv.*, 145 Ga. App. 889 (245 SE2d 58) (1978), and the contention of the appellant guarantors on the note, who were in fact the owners of the corporate debtor, that the language of the

instrument shielded them either from suit prior to foreclosure or from any deficiency judgment was denied in view of the plain language of the instruments. The same situation exists here. It is true that the Krupps as "principals of the debtor," that is, simply in their status of general partners of Valley Estates, have no deficiency judgment liability to the appellee. As endorsers of the note, however, this potential liability has been expressly reserved. Appellants ignore that the same person may be liable to suit in one capacity but not in another, and that the character in which he is sued is to be determined from the case as a whole. Cf. *Wallace v. Wallace,* 142 Ga. 408 (1) (83 SE 113) (1914). The Krupps as endorsers are, by the express language of the security agreement which is incorporated into the note on which this action is brought, specifically excluded from the protection accorded the maker and its principals. Neither the motion to dismiss nor the plea in abatement was meritorious.

3. It is further contended that in the event this court interprets the documents in the manner set out above, a jury question remains as to the intent of the parties to absolve the endorsers on the note from liability, for which reason summary judgment should not have been granted. We find no ambiguities in the language quoted which need jury resolution. The construction of contracts is a prerogative of the court which is delegated to the jury only where the ambiguity contended for is one of fact and resort should be had to aliunde testimony. *Bennett v. Dove,* 93 Ga. App. 57 (3) (90 SE2d 601) (1955). Such ambiguity does not exist here. Code § 20-701. Nothing to the contrary is held in *Yancey Bros. Co. v. Sure Quality Framing Contractors,* 135 Ga. App. 465 (218 SE2d 142) (1975). There the question was what the words "personal endorsements" meant within the context of an instrument where it was debatable whether the signatories were either principals or sureties. Here the Krupps signed individually *both* as principals and as endorsers. The meaning of the word "Principals" was carefully defined in the security agreement. The meaning of the word "endorsers" on the note is unambiguous. Consequently, no jury question is presented as to the capacities in which the various signatures were

appended. The debt and the default, as well as the sending of default letters in compliance with notice requirements, is admitted. The grant of summary judgment on these issues was not erroneous.

4. The note here contains the following language: "In case this note is collected by law or through an attorney at law, all costs of collection, including 10% of the principal and interest as attorney's fees, shall be paid for by the maker." Where, after default, the specified notice is served on the maker and the maker does not pay, the costs and fees specified become a part of the debt owed by that maker. *Bank of Early v. Broun,* 147 Ga. App. 271 (1978). It is true that *Broun* differs from the present case in that it concerned defendant guarantors rather than endorsers, and the contract of guaranty specifically included payment of the note, expenses, and attorney fees. This note specifies that in case the note is collected through an attorney "all costs of collection, including 10% of the principal and interest as attorney's fees, shall be paid by the maker." Since the maker's unpaid obligation becomes that of the endorser, the contract must be construed as rendering the endorsers liable for the attorney fees as stipulated. *McMillan v. Heard Nat. Bank,* 19 Ga. App. 148, 153 (91 SE 235) (1916), holding that a surety on a promissory note providing for attorney fees is ordinarily liable therefor, comments that the "law looks with favor upon the rights of an indorser or surety, and his liability is one of strict law." The liability here is to pay the debt of the maker after default and failure to do so, and the attorney fees are a part of that debt.

The trial court did not err in entering up summary judgment in favor of the plaintiff.

*Judgment affirmed. Smith and Banke, JJ., concur.*

ARGUED NOVEMBER 13, 1978 — DECIDED DECEMBER 1, 1978 — REHEARING DENIED DECEMBER 14, 1978.

*Nall & Miller, Gerald A. Friedlander,* for appellants.
*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Roderick C. Dennehy, Jr., George B. Haley,* for appellee.